## Case No. 14,724.

### UNITED STATES v. CARLISLE.

[4 Am. Law T. Rep. (U. S. Cts.) 231.]

Circuit Court, E. D. Michigan. Nov., 1871.

CONTRACTS — CONSTRUCTION — ACCEPTANCE — INJUNCTION—PLEADING.

[1. The prosecutor of a qui tam action (as to which there had been an agreement between him and the government relative to payment, out of

¹ [Reported by Hon. William Cranch, Chief Judge.]

any judgment obtained, of the expenses of the action. including "25 per cent. of a moiety of the judgment" to an informer, and division of the balance between him and the government) wrote the postmaster general, after judgment was obtained, asking for his views and instructions as to how the 25 per cent. was to be paid,—whether it was to come out of the moiety going to the government, or from the entire amount received, the balance to be divided between the government and him according to the terms of the law. In answer the postmaster general wrote. "The 25 per cent. must first be deducted," and then, after referring to certain expenses to be deducted. said, "The remainder can then be distributed according to the terms of the law." *Held*, that the prosecutor's reply (taking no exception to the terms stated in the postmaster general's letter. but reciting the fact that a decree for distribution had been entered without deducting the 25 per cent., and suggesting that the clerk be authorized to pay 25 per cent. of the sum recovered and going to the government to satisfy the informer's claim, and then, after reciting that his expenses would be 16 per cent. of his moiety, stating that he proposed, when he received it, to pay into the treasury 12 per cent. of his moiety, after deducting 16 per cent. for expenses, and adding that this would be more favorable for the government than "the terms indicated by your letter") contained a recognition of "the terms indicated" as the true terms, and a proposition in lieu thereof.]

[2. The acceptance of the prosecutor's proposition by the postmaster general did not give the government a mere personal claim against the prosecutor for the 12 per cent., but vested in it an interest to that extent in his moiety of the judgment fund: so that, the decree for distribution having provided for payment to him of a moiety, without any deduction on account of the 25 per cent., he will be treated as a trustee of the fund for the government, to the extent of the 12 per cent.]

[3. The sending by the postmaster general, to the clerk of the court in which the qui tam action was pending, of a letter directing him to pay the 25 per cent. to the informer, from the moiety going to the government, "as suggested in C.'s (prosecutor's) letter," which was inclosed, was an acceptance of the prosecutor's proposition.]

[4. Where the answer to a bill for injunction admits that defendant wrote certain letters, a denial therein that the construction given thereto by complainant is correct will not entitle defendant to a denial of the injunction. the construction thereof being for the court.]

This was a bill in equity filed by complainants to recover from defendant Carlisle a portion of a certain judgment fund to which the United States set up equitable rights by virtue of certain agreements between the postmaster general and Carlisle. The facts are as follows: In November, 1868, a judgment was recovered in a qui tam action, wherein Carlisle was qui tam prosecutor against Calvin F. S. Thomas and others for frauds committed in furnishing supplies to the post office department. Indictments had also been found against the parties who committed the frauds, and the qui tam actions were subsequently brought to recover the penalties and damages under the fraud act of March 2, 1863 (12 Stat. 696). It was averred in the bill that Carlisle, who was then special agent of the treasury, agreed to reimburse the United States for all expenses incurred, advances made, and assistance rendered in the prosecution of these qui tam ac-

tions, out of such judgment as should be recovered in those cases; that certain sums paid for assistant counsel to aid the district attorney, and for the salary of an assistant in the investigation of the cases and other outlays, together with 25 per cent. of a moiety of the judgment to be recovered, which was to be paid to an informant for important information, should be first deducted from the gross amount of the judgment, and the remainder be divided in equal portions between the government and the prosecutor. The existence of this understanding between the government and the defendant Carlisle was evidenced by the correspondence between the late Postmaster General Randall and Carlisle. Tacitly admitting the facts above stated, Carlisle writes, under date of November 25, 1868, to "learn the views and receive the instructions" of the department relative to the disposition of the judgment fund. The reply of the postmaster general directed such a disposition of the fund as was contemplated in the agreement averred in the bill and given above. Carlisle again, on February 10, 1869, writes the postmaster general, and without excepting to the terms of distribution proposed, requested that authority may be given to the clerk to pay the 25 per cent. of one moiety of the judgment from the moiety of the government, and proposes on his part, in case this advance is made by the government "to pay into the treasury, when he receives it, twelve (12) per cent. of the moiety going to him (the prosecutor), after deducting sixteen per cent. for expenses." To this offer no answer was given directly to Carlisle, but he admitted, and it was further in proof, that the letter containing Carlisle's proposition was sent to the clerk of the district court for the E. D. of Michigan, by the postmaster general, with instructions to pay the money to the informer in accordance with the letter of Mr. Carlisle, "herewith sent," and such money was accordingly paid. The bill averred and the answer admitted the receipt by Carlisle of forty-three thousand five hundred and seven and 27/100 dollars, parcel of his moiety of said judgment, and also the payment by the United States of the 25 per cent. to the informer —some $12,615. Carlisle refused payment of the 12 per cent. agreed to be paid and the bill was filed, praying to have him declared a trustee for complainants of 12 per cent. of his moiety of said judgment after deducting 16 per cent. for costs and expenses, and asking that he be compelled to pay to complainants 12 per cent. of 84 per cent. of the portion of his moiety which he had received, and to enjoin him from receiving, and the clerk from paying, any further portion of said moiety until satisfaction of complainant's rights in the premises. The motion for a temporary injunction was argued and granted. On final hearing on pleading and proofs, the injunction was made perpetual, as appears in the opinion of the court. The decision upon the motion is given first in order.

A. B. Hayward, U. S. Dist. Atty., and H. H. Swan, Asst. U. S. Dist. Atty.

Alfred Russell, for defendants.

LONGYEAR, District Judge. The decision of this motion depends almost entirely upon the construction to be given to Carlisle's letter of February 10, 1869, Schedule C of the bill, and the question of acceptance by complainant of the proposal therein contained. In order to arrive at a true construction of that letter it is necessary to go back and examine the preliminary steps leading to it and constituting the consideration for the proposition contained in it. If it be true, as alleged in the bill, that the 25 per cent. reward paid to Brown by complainant out of its moiety, was, by the original agreement, to be deducted from the whole amount recovered, before distribution, then it (the amount so paid) was to come out of the judgment found, and as between these parties constituted a claim upon it of which the moiety of each was to bear its part, and the letter of February 10, 1869, proposing to complainant that it pay the whole amount going to Brown out of its moiety, and that Carlisle would pay to complainant 12 per cent. of his moiety after deducting 16 per cent. for expenses, was simply a proposition to charge his moiety with said 12 per cent. in favor of complainant. in lieu of the charge which was before upon it in favor of Brown; the consideration for the proposition being, that the complainant would assume and pay and thus relieve defendant's moiety from the entire charge in favor of Brown. Was there any such original agreement then, as stated in the bill in relation to the manner in which the 25 per cent. going to Brown was to be paid? The answer positively denies any such agreement, and if that was all, the motion should no doubt be denied. But when the question appears first to have suggested itself to defendant, as to what fund the 25 per cent. to Brown was to be paid from, he seems himself to have been in doubt, and in his letter of November 25, 1868 (Schedule B to bill) he says, "I desire to learn the views and to receive your instructions as to how and the manner in which the 25 per cent. is to be paid; whether it is to come from the moiety going to the government or whether it is to be paid from the entire amount received and the balance divided between the Government and prosecutor, according to the terms of the law." In reply to this letter he is informed, under date of January 7, 1868 (Schedule A of the bill), as follows: "In reply you are informed that the 25 per cent. must first be deducted," and thereafter mentioning certain other matters which will be noticed hereafter, adds: "The remainder can then be distributed according to the terms of the law." It seems that before the letter was received by defendant a decree of distribution had been entered without deducting the 25 per cent. On receipt of it, however, defendant in reply wrote his letter of February 10, 1869.

In this letter he takes no exception to the terms proposed, but on the contrary, after reciting the fact of the entry of decree of distribution as above stated, and making some observations in regard to it, he says, "In this view of the case I would respectfully suggest, in order to cancel the claim which is made by the person giving the information" (meaning Brown) "that the clerk be authorized to pay 25 per cent. of the sum recovered and going to the government," and then after stating that his expenses over and above his taxable costs will be 16 per cent. of his moiety, adds (speaking of himself in the third person as the prosecutor) as follows: "He proposes, however, to pay into the treasury, when he receives it, 12 per cent. of the moiety going to him, after deducting 16 per cent. for expenses;" and the letter closes as follows: "By this ruling of the court and the proposal of the prosecution it will be seen that the government gains more than it would under the terms indicated by your letter of the 7th ult;" thus clearly indicating that, 1st, "the terms indicated" by the letter to defendant of January 7, 1869, directing that the amount going to Brown should be deducted from the whole sum recovered before distribution, were recognized as the true terms, and, 2nd, that the proposition of February 10th, 1869, was in lieu of such terms.

I hold, therefore, with the light I now have, that the proposition contained in the letter of defendant Carlisle of February 10th, 1869, if accepted by complainant, would vest in complainant an interest in defendant's moiety of the judgment fund in controversy equal to 12 per cent. thereof after deducting 16 per cent. therefrom for his expenses; and that such interest, standing upon the record as it does, in defendant's name, he must be treated for the purposes of this motion as a trustee of the fund to that extent for complainant. It is true it is denied in the answer that the construction above given to the letters referred to is correct. But he admits that he wrote the letters, and the letters being so admitted their construction is, for the court. Denials in an answer, in order to entitle a defendant to a denial or dissolution of an injunction, must be of facts, and not of conclusions where the facts are admitted.

Some stress was laid upon the use of the words "when he receives it" in the proposition of defendant of February 10, 1869, and it was argued that the use of the words create if anything a mere personal obligation to pay the 12 per cent. when he should receive it, and does not create any interest in complainant in the fund itself, and therefore there is a complete remedy at law, and this court as a court of equity has no jurisdiction in the premises. I think that, in view of all the antecedent and surrounding circumstances, these words "when he receives it," must be deemed to mean, as I have no doubt the writer did mean, "when the same shall be paid in." In support of this construction it is

to be observed that the 12 per cent. proposed to be paid into the treasury was "of the moiety" going to defendant, that is, part and parcel of such moiety, eo nomine.

The only question that remains to be considered is, whether the defendant's proposal of February 10th, 1869, was accepted by complainant. No notification of acceptance seems to have been given direct to the defendant. On receipt, however, of defendant's letter of February 10th, or soon thereafter, under date of February 27, 1869, the postmaster general, who had charge of the matter for complainants, and with whom all the transactions and correspondence in the matter was had, enclosed defendant's letter of February 10, to the clerk of the court, and instructed him in substance to pay the 25 per cent. going to Brown from the moiety going to complainant "as suggested in Mr. Carlisle's letter," and the same has been paid accordingly, so far as received by the clerk. This was an acceptance in fact, and from the fact that defendant's letter containing the instructions was sent with the instructions, and in express terms made the basis of them, it would seem that it was anticipated that the clerk would retain the 12 per cent. after deducting 16 per cent. and pay the same into the treasury, holding defendant's letter of February 10 as his voucher therefor as against defendant, which, as the case now stands, I think he was fully authorized to do. The clerk's office is a public office. The matters concerned were matters appearing by the public records in his office. The instructions of the postmaster general to the clerk, inclosing defendant's letter, became a part of those records. Those records are notice to all the world of what they contain, especially to parties to them. I think, therefore, there was a sufficient acceptance to make the proposal binding upon the parties. I have therefore said nothing about the amounts alleged in the bill to have been advanced by complainants to defendant Carlisle, to aid him in the prosecution of the suit, because if there was anything of that, it was all merged in the compromise based upon Carlisle's letter of February 10, 1869, and as that compromise has sufficient foundation to stand upon without those items, they are of no consequence in the present consideration. Being of opinion, therefore, that at least a prima facie case is made out against the defendant Carlisle, and that therefore, so much of the moiety of the fund in question going to Carlisle as is necessary to meet the claim of complainant upon that moiety should be retained in the clerk's hands until the case can be presented and fully heard upon its merits, an injunction will be allowed to issue as against him. The defendant Davison is clerk of the court in whose hands as such a portion of the fund in dispute now is, and the residue will eventually come. The object of making him a party defendant was solely to restrain him from paying over the fund to

Carlisle until the merits of the case can be litigated between him and the complainant. The whole object sought would probably be accomplished by the injunction against Carlisle alone; but inasmuch as Davison admits that he threatens to pay over the fund to Carlisle, regardless of the claims set up by complainant, I think complainant is entitled to an injunction against him also. The motion for injunction is granted as against both defendants, but it must be so modified as to restrain Carlisle from receiving and the clerk from paying over to him only 12 per cent. of the whole amount of the moiety decreed to Carlisle, less 16 per cent. thereof.

The case was subsequently heard on pleadings and proofs and taken under advisement by the court. The opinion of the court on the final hearing, was as follows:

LONGYEAR, District Judge. When the case was before the court on the motion for a preliminary injunction, the questions involved, as presented by the pleadings, were fully considered. In the light in which the case was thus presented it was held "that the proposition contained in the letter of defendant Carlisle of February 10th, 1869, if accepted by complainant, would vest in complainant an interest in defendant's moiety of the judgment fund in controversy, equal to 12 per cent. thereof after deducting 16 per cent. therefrom for his expenses; and that such interest standing upon the record, as it does, in defendant's name, he must be treated * * * as a trustee of the fund to that extent, for complainant." It was also then further held, that a sufficient acceptance by complainant of Carlisle's proposition in his said letter of February 10th, 1869, to make the terms of that proposition binding upon the parties appeared by the pleadings. I can see nothing in the proofs which have since been taken that tends to change or modify the conclusions thus arrived at upon the pleadings; on the contrary, I find much in those proofs tending to confirm those conclusions. The proofs show that the transactions between the postmaster general and Carlisle, out of which this suit has arisen, were contracted in a very loose and bungling manner; and if they were left to stand entirely upon the proof of what took place between them, without the light thrown upon those transactions by their letters, it would be very difficult to say just what those transactions were, and what rights and liabilities, if any, were created. By the letters, however, it appears that the postmaster general and Carlisle never had any doubts whatever upon those points, but on the contrary, that they understood each other perfectly well. The only doubt Carlisle seems to have entertained at any time was that expressed in his first letter to the postmaster general (Nov. 25th, 1868), relating to the reward of 25 per cent.

to be paid to Brown, and that was (quoting his language) "whether it should come from the moiety going to the government, or whether it should be paid from the entire amount recovered, and the balance be divided between the government and the prosecutor, according to the terms of the law." In this letter Carlisle says to the postmaster general: "I desire to learn the views, and to receive your instructions, as to how and the manner in which the 25 per cent. is to be paid." In reply to this the postmaster general, in his letter of January 7th, 1869, says: "The 25 per cent. referred to must first be deducted, as also must the sum paid assistant counsel ($500), and the amount paid Louis Brush ($853.12), your assistant, for services and expenses." So well satisfied was Carlisle with this reply that we find him filing a copy of it in the case in which the judgment to which it relates was recovered, with an indorsement in his own handwriting, as instructions to the clerk, as follows: "The proportions, I think, in which distribution will be made, as indicated by the within, would be: Costs, 83 per cent.; informer's share, 25 per cent.; balance equally between government and prosecutor." It is this reply of the postmaster general to which Carlisle also alludes in his letter of February 10, 1869, in which the new arrangement which constitutes the basis of this suit was proposed. It is difficult to conceive of a more complete or conclusive recognition or admission of an existing arrangement or agreement than what is shown by the above facts. Here then was a full and valid consideration for the proposition contained in Carlisle's letter of February 10, 1869. In fact the new arrangement, or agreement, which resulted from the proposition, was but a substitution for the former arrangement.

When this case was before the court on the former occasion alluded to, it was held that the filing of Carlisle's letter of February 10, 1869, with the clerk of the court, by the postmaster general, with instructions to him to comply with so much of the terms as related to conditions to be performed on the part of the government, was such an acceptance of the propositions contained in said letter as made it binding in all its parts, on both parties. In addition to this we now have Carlisle's express admission in his testimony, that he knew the above facts and that the postmaster general was acting upon the said letter. Thus the substituted arrangement was made as complete and binding as it could be. It will not do to say that because the postmaster general in his instructions to the clerk of the court, accompanying Carlisle's letter, said nothing about the 12 per cent., but merely instructed the clerk to pay to Brown the 25 per cent., from the moiety going to the government, it was no acceptance of the proposition in all its parts. The instructions accompanied the letter and had express reference to it. All that was needed as

between the government and the clerk of the court, one of its own officers, was to confer upon the latter authority to do on the part of the government what was to be done by it under Carlisle's proposition. What was to be done by Carlisle in consideration of such performance on the part of the government would follow as a matter of course. A decree must be entered in this case making the injunction heretofore issued perpetual, and for the payment to complainant by the clerk of the district court out of the moiety of the judgment against Thomas and others described in the bill of complaint, adjudged to the defendant Carlisle, a sum equal to 12 per cent. of said moiety, after deducting from said moiety 16 per cent. for expenses, etc., and for costs to complainant as against the defendant Carlisle, but without costs as against the defendant Davison.